## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA
## CASE NO. 25-CR-117 (ECT/SGE)

---

UNITED STATES OF AMERICA,

        Plaintiff,

                          **DEFENDANT'S POST-HEARING MEMORANDUM IN SUPPORT OF PRETRIAL MOTIONS**

JUSTIN DAVID EICHORN,

           Defendant.

---

## <u>INTRODUCTION</u>

Mr. Eichorn, by and through undersigned counsel, respectfully submits this post-hearing memorandum in support of his motion to compel disclosure of evidence favorable to defendant (ECF No. 36), his motion to dismiss the indictment based on vindictive and selective prosecution (ECF No. 37), his motion to suppress statements (ECF No. 38), and his motion to suppress evidence obtained through illegal search and seizure (ECF No. 40).

## <u>BACKGROUND</u>

On March 19, 2025, the government charged Justin David Eichorn by complaint with one count of attempted enticement of a minor in violation of 18

U.S.C. § 2422(b). On April 1, 2025, Mr. Eichorn was indicted in a single-count indictment charging him with attempted enticement of a minor.

Mr. Eichorn filed motions to compel disclosure of evidence favorable to defendant (ECF No. 36), to dismiss the indictment based on vindictive and selective prosecution (ECF No. 37), to suppress statements (ECF No. 38), and to suppress evidence obtained through illegal search and seizure (ECF No. 40). This Court held a motions hearing on August 6, 2025, at which the government submitted three exhibits and the defense submitted twenty-four exhibits. The Court heard testimony from Bloomington Police Officer Kyle Maitrejean and FBI Special Agent Terry Getsch. Mr. Eichorn submits the following in support of his pretrial motions:

## **FACTUAL BACKGROUND**

### INVESTIGATION/STING

In March 2025, state law enforcement officers engaged in a multi-jurisdictional sting operation to identify individuals that would offer to hire girls under the age of 18 for commercial sex. *See generally* Exs. D2, D4, D6-D21. If the caller indicated they wanted to purchase a sex act from a 17-year-old female (decoy officer) the undercover communicator would direct the suspect to a specific staging and arrest site located in a parking lot in the 8300 block of Normandale Boulevard. *Id.* at D2, D4, D6-D16. There, the surveillance officers would attempt to identify the vehicle the suspect was driving. *Id.* Once the suspect told the undercover

communicator they were at the arrest location, marked patrol units were called to effect the arrest. *Id.* The undercover communicator would send a confirmation code to the suspect's mobile phone which populated on the notification screen and called the suspect's phone to verify. *Id.* Arresting officers would photograph the confirmation code and later upload it as evidence. *Id.*

TEXT MESSAGES

On March 11, 2025, the suspect[1] engaged in text messages with an undercover Bloomington police officer posing as an individual identified as Lexi. Transcript of August 6, 2025, Motion Hearing at 38:20-39:16 (hereafter "Tr. at __"); Ex. A at 2. Mr. Eichorn texted with the decoy on and off throughout March 11 and March 12 until, after the decoy informed Mr. Eichorn that she was 17 years old, Mr. Eichorn did not respond. Ex. A at 2-4.

On March 13, Mr. Eichorn contacted the decoy and inquired about various items including rate and availability. Ex. A at 4. Then, on March 17, Mr. Eichorn texts an individual identified as Kenzi. *Id.* at 6. Mr. Eichorn then informs the decoy that he is not entirely comfortable and, if they met in person, he would like to meet her outside to become comfortable. *Id.* at 6-7. Again, Mr. Eichorn inquires about

---

[1] The suspect was not identified by law enforcement as Justin David Eichorn until after he was arrested, placed in handcuffs, and law enforcement searched his truck without consent on March 17, 2025. Tr. at 87:3-7.

various items such as rates and services. *Id.* at 7. Eventually, the decoy sent a picture to Mr. Eichorn, to which he replied the decoy looks to be in her 20s. *Id.* at 10.

TRAVEL TO/CONDUCT AT LOCATION

In the afternoon on March 17, 2025, Mr. Eichorn drove to the area of the 8300 block on Normandale Boulevard. Ex. A at 12. The decoy provided a map of the area that showed where Mr. Eichorn was to park. *Id.* at 11. Mr. Eichorn did not park where the undercover communicator had instructed him to park. *Id.* at 12. The decoy told Mr. Eichorn she would not come out until he parked where he was told to park. *Id.* The decoy told Mr. Eichorn that she could "see the spot from my apartment. There are no cars there. If you can't find the parking spot how are you gonna find my G spot?" *Id.*

Eventually, Mr. Eichorn parked in the area and exited his vehicle. Ex. A at 12. He walked around the parking lot looking at his phone, crossed between the restaurant parking lot and apartment complex parking lot through a treed area. *Id.* at 12-13; Ex. D23.

ARRESTS[2]

Mr. Eichorn was identified by surveillance officers as the individual texting with the decoy. Tr. at 41:23-42:6. At this point Mr. Eichorn stopped, retraced his

---

[2] In addition to Mr. Eichorn, 13 other individuals were arrested during the Bloomington sting operation and five other individuals were arrested on March 20, 2025, during a similar Washington County sting operation. *See* Exs. D2, D4, D6-D21.

steps back through the trees, and walked back to his vehicle. *Id.* at 41:10-16; Exs. D22-23. He had shut off his phone so he could not receive the confirmation text that he was supposed to receive prior to his arrest. Tr. at 42:17, 65:18-67:6.

Upon returning to his car, Mr. Eichorn opened the driver's side door and was starting to enter the vehicle to leave. Ex. D22. Before being able to enter his vehicle law enforcement approached him and advised him that he was under arrest. He was directed to place his hands behind his back and was handcuffed. *Id.* Officers asked if he had any weapons to which he responded just his keys. *Id.* Law enforcement then seized his keys and asked him if he had an ID. *Id.*

SEARCHES OF MR. EICHORN'S TRUCK

After his arrest, officers advised Mr. Eichorn they would grab his ID from the truck for him. Mr. Eichorn did not give the officers permission to enter his truck. Law enforcement then entered his vehicle and seized a telephone from the center console, cash from the center console, money from the center console and the driver's side door, along with a condom from the driver's side door. Tr. at 44:23-45:1. Law enforcement officers took photographs of these items, transported Mr. Eichorn to the Hennepin County Jail, and towed his vehicle.

STATEMENTS

Following his arrest, law enforcement did not advise Mr. Eichorn of his *Miranda* rights prior to engaging in custodial interrogation. Once he had been

handcuffed and was in custody, officers began questioning Mr. Eichorn about the keys to his truck, his phone, permission to go into his vehicle, along with other questioning.

PROSECUTION

Mr. Eichorn's case was initially referred to the Hennepin County Attorney's Office, where he was charged with Prostitution – Actor Hires or Agrees to Hire and Reasonably Believes Under 18 but at least 16, in violation of Minn. Stat. §609.324, Subd. 1(c)(3). Ex. D24. In addition to Mr. Eichorn, 13 other individuals were arrested during the Bloomington sting operation and five other individuals were arrested on March 20, 2025, during a similar Washington County sting operation. *See* Exs. D2, D4, D6-D21.

In the Hennepin County cases, Cazhco Inamagu (File #27-CR-25-761), Yeramothu (File #27-CR-25-7386), McElroy (File #27-CR-25-6224), Amampa Chico (File #27-CR-25-7388), Hussein (File #27-CR-25-6348), Salmonsen (File #27-CR-25-6463), Huerta (File #27-CR-25-7640), Lee Mais (File #27-CR-25-6350), Dawson (File #27-CR-25-6352), Barclay (File #27-CR-25-6349) Calle-Chuqui (File #27-CR-25-7641), Kopetsky (File #27-CR-25-6804), and Taweeleh (File #27-CR-25-6801) were all charged with Prostitution – Actor Hires or Agrees to Hire and Reasonably Believes Under 18 but at least 16, in violation of Minn. Stat. §609.324, Subd. 1(c)(3). Exs. D2, D4, D6-D16.

In the Washington County cases, Balasubramanisn (File #82-CR-25-1210), Chirongoma (File #82-CR-25-1212), Crowe (File #82-CR-25-1213), Garcia-Gonzales (File #82-CR-25-1215) and Harr (File # 82-CR-25-1216) were also all charged with violating Minn. Stat. §609.324, Subd. 1(c)(3) Prostitution – Actor Hires or Agrees to Hire and Reasonably Believes Under 18 but at least 16. Exs. D17-D21.

Of the individuals charged in state court, Mr. McElroy has pleaded guilty in Hennepin County District Court pursuant to a Plea Agreement that calls for probation and a 90-day jail cap, a presentence report with a psychosexual evaluation and a SUDA evaluation with an Order to follow the recommendations, including: internet monitoring, abstention and prostitution assessment. Ex. D3. Mr. Taweeleh was indicted federally and his Hennepin County case dismissed on April 15, 2025. Mr. Taweeleh was not only charged with Prostitution-Actor Hires or Agrees to Hire and Reasonably Believes Under 18 but at least 16, but also with Fleeing a Police Officer in a Motor Vehicle, endangering the lives of the officers. Mr. Taweeleh also has a prior sexual assault conviction. Mr. Huerta's state case was also dismissed because he was indicted federally on May 20, 2025.

On March 19, 2025, the government charged Mr. Eichorn by complaint with one count of attempted enticement of a minor in violation of 18 U.S.C. § 2422(b), and he was indicted on the same charge on April 1, 2025.

Almost immediately after the U.S. Attorney's Office charged Mr. Eichorn, acting United States Attorney Lisa T. Kirkpatrick stated in a press release that "[t]he U.S. Attorney's Office has no tolerance for public officials who violate federal law-particularly those laws meant to protect children[.] I am grateful to the Bloomington Police Department, to the FBI, and to all law enforcement officers who use undercover operations to identify and arrest child sex predators to prevent them from abusing real children." Ex. D1.

## ARGUMENT

I.    **THE INDICTMENT MUST BE DISMISSED BASED UPON THE GOVERNMENT'S VINDICTIVE AND SELECTIVE PROSECUTION OF MR. EICHORN.**

### A. Vindictive Prosecution.

A Prosecution arising from a vindictive design to punish a defendant for exercising a valid legal right violates due process. *United States v. Leathers*, 354 F.3d 955, 961 (8th Cir. 2004). To establish a vindictive prosecution, "[i]t is the defendant's burden to show that the prosecution was brought in order to punish the defendant for the exercise of a legal right." *Id*. at 961. "A vindictive or improper motive may be proved either by direct or circumstantial evidence." *Id*. An accused must show 'bad faith or maliciousness' on the part of the prosecutor. *United States v. Scott*, 610 F.3d 1009, 1017 (8th Cir. 2010). "Objective evidence," showing that "the prosecutor acted with genuine animus towards a defendant and that the

defendant would not have been prosecuted but for that animus" will establish a vindictive prosecution. *United States v. Wilson*, 262 F.3d 305, 314 (4th Cir. 2001).

In *Wilson*, the Fourth Circuit Court of Appeals noted that, "[t]o establish prosecutorial vindictiveness, a defendant must show, through objective evidence, that (1) the prosecutor acted with genuine animus toward the defendant and (2) the defendant would not have been prosecuted but for that animus." *Wilson*, 262 F.3d at 314. The court went on to explain that:

> If the defendant is unable to prove an improper motive with direct evidence, he may still present evidence of circumstances from which an improper vindictive motivation may be presumed. To invoke such a presumption, a defendant must show that the circumstances "pose a realistic likelihood of 'vindictiveness.'" *Blackledge*, 471 U.S. at 27, 94 S.Ct. 2098. By recognizing the possibility of creating a presumption that shifts the burden to the government to justify its conduct, not only is vindictive prosecution deterred, but also defendants are "freed of [the] apprehension of such retaliatory motivation." *Goodwin*, 457 U.S. at 376.

*Id.* at 315.

The prosecution in this case was vindictive in that it was motivated solely by the fact that the government is unable to secure a more significant period of incarceration for Mr. Eichorn in the initial prosecution by the Hennepin County Attorney's Office. In the original prosecution, the Hennepin County Attorney's Office sought to use precisely the exact core factual allegations made in the present indictment. The only difference between the state and federal prosecutions is the potential punishment. In order to obtain a substantial enhancement in Mr. Eichorn's

sentence, the U.S. Attorney's Office charged him with violating 18 U.S.C. §2422(b), an offense that carries a mandatory minimum prison sentence of 10 years if convicted. In the Hennepin County prosecution, Mr. Eichorn, along with 13 other charged defendants, was looking at a presumptive sentence of probation with potential county jail time as a condition of probation. The government is now attempting to regurgitate the same factual allegations alleged in state court in an indictment to vindictively retaliate against Mr. Eichorn simply because he is a public office holder and exercised his first amendment right to political association and hold office. *Kusper v. Pontikes*, 414 U.S. 56-57 (1973) (noting that the First Amendment guarantees the "freedom to associate with others for the common advancement of political beliefs and ideas . . . [and] the right to associate with the political party of one's choice"). These circumstances are sufficient to establish a presumption of vindictive prosecution on the part of the government and now the burden shifts to the government to justify its conduct.

Less than a week after Mr. Eichorn and others were charged in Hennepin County District Court, he was charged in the present federal case. It is clear from reading the indictment and reviewing the discovery in the government's case, the facts in this federal prosecution are identical to the facts in the Hennepin County prosecution. There is no reason, other than personal animus based upon his public office, that the government chose to remove Mr. Eichorn's prosecution from the

other state court cases. As Ms. Kirkpatrick stated, "[t]he U.S. Attorney's Office has no tolerance for public officials who violate federal laws." Ex. D1.

Presumption of vindictiveness by the prosecution is established when one looks at the totality of Mr. Eichorn's objective circumstances such as, the subject matter of the indictment, the fact that numerous others identically charged in state court are not being prosecuted federally, and the government's assessment that he would not receive the desired sentence in state court. Accordingly, Mr. Eichorn would not have been prosecuted federally but for the personal animus against him arising from his political affiliation and public office. Therefore, Mr. Eichorn moves to dismiss the indictment on the basis of vindictive prosecution.

**B. Selective Prosecution.**

Over 100 years ago, the Supreme Court, in *Yick Wo v. Hopkins*, 118 U.S. 356 (1886), held that the discriminatory application of a valid law to similarly situated persons is an unconstitutional denial of equal protection. *See United States v. Johnson*, 577 F.2d 1304, 1308 (5th Cir. 1978). "Selectivity is permitted only to foster needed flexibility, and not to disguise unconstitutional arbitrariness." *Teague v. Alexander*, 662 F.2d 79, 85 (D.C. Cir. 1981) (Tamm, J., concurring). Otherwise, "selective prosecution can then become a weapon used to discipline political foe and the dissident" and "[t]he prosecutor's objective is then diverted from the public interest to the punishment of those harboring beliefs with which the administration

11

in power may disagree." *United States v. Berrios*, 501 F.2d 1207, 1209 (2d Cir. 1974).

"A prosecutor's discretion is subject to constitutional constraints. One of these constraints, imposed by the equal protection component of the Due Process Clause of the Fifth Amendment, is that the decision whether to prosecute may not be based on an unjustifiable standard such as race, religion or arbitrary classification." *United States v. Armstrong*, 517 U.S. 456, 464 (1996). To demonstrate a claim that the government has selectively targeted someone for prosecution, the claimant must show that the prosecutorial decision "had a discriminatory effect and that it is motivated by discriminatory purpose." *Id.* at 465. The Eighth Circuit has interpreted the two-prong standard as

> Requiring a selective prosecution claimant to show 1) that he has been singled out for prosecution while others similarly situated have not been prosecuted for similar conduct, and 2) that the government's action and thus singling him out was based on an impermissible motive such as race, religion, or the exercise of constitutional rights.

*United States v. White*, 928 F.3d 734, 742-43 (8th Cir. 2019) (quotation omitted).

"[A]lthough prosecutorial discretion is broad, it is not 'unfettered'. Selectively in the enforcement of criminal law is … subject to constitutional constraints." *Wayte v. United States*, 470 U.S. 598, 608 (1985) (quoting *United States v. Batchelder*, 442 U.S. 114, 125 (1979) (internal quotations omitted)). These constitutional constraints forbid a prosecutor from basing the decision to prosecute on an "unjustifiable

standard such as race, religion, or other arbitrary classification, including the exercise of protected statutory and constitutional rights." *Id.* (internal citations and quotations omitted); see also *United States v. Armstrong*, 517 U.S. 456, 464 (1996); *United States v. Marcum*, 16 F.3d 599, 602 (4th Cir. 1994) ([T]he government may not choose to prosecute a person solely because of his race, religion, or the exercise of his constitutional rights"). These include First Amendment rights. See *United States v. Falk*, 479 F.2d 616, 620 (7th Cir. 1973) ("And, just as discrimination on the basis of religion or race is forbidden by the Constitution, so is discrimination on the basis of the exercise of protected First Amendment activities, whether done as an individual or, as in this case, a member of a group unpopular with the government"). To establish discriminatory prosecution, it is necessary to show "that the … system had a discriminatory effect and that it was motivated by a discriminatory purpose." *Wayte*, 470 U.S. at 608. The discriminatory effect in a selective prosecution inquiry is judged by ordinary equal protection standards. See *Wayte*, 470 U.S. at 608. It is not necessary to show that no others who are similarly situated have been prosecuted but rather that "others are generally not prosecuted for the same conduct." *United States v. Wilson*, 639 F.2d 500, 503 (9th Cir. 1981) (emphasis added).

    *1. Similarly situated cases not chosen for prosecution.*

In making a case for selective prosecution, the Supreme Court specifically approved the use of data where similarly situated persons . . . were prosecuted by the state but were not prosecuted in federal court. *United States v. Armstrong*, 517 U.S. 456, 470 (1996). Here, eleven of the Hennepin County sting defendants have not been prosecuted in federal court and none of the five Washington County defendants have been prosecuted in federal court. The requirement that the uncharged cases be cases in which the evidence "was as strong or stronger than the defendant," *see e.g.*, *United States v. Smith*, 231 F.3d 800, 810 (11th Cir. 2000), is easily met here because the cases the government has failed to pursue include cases of brazen evidence of overt prostitution involving minors.

Those cases not selected for federal prosecution include the five Washington County defendants, all of whom were arrested knocking on the door of the decoy apartment at the time of their arrest. Similarly, the Hennepin County cases not selected for prosecution followed the same script as Mr. Eichorn's underlying facts. However, those cases are distinguishable in that Mr. Eichorn: 1) did not park where he was told to park; 2) walked away from his vehicle, walked around, then turned around and returned to his vehicle to leave; and 3) had shut off his phone so the decoy could have no further communication with him.

The other Hennepin County cases have a much stronger basis for prosecution than Mr. Eichorn's case. These federally uncharged individuals are charged with

exactly the same crime as Mr. Eichorn yet are being ignored by the United States Attorney's Officer for the District of Minnesota. These state court prosecutions show that there are countless opportunities for the federal government to enforce the 18 U.S.C. § 2422(b) prohibition of persuading, inducing or enticing an individual who has not attained the age of 18 years of age to engage in prostitution or any sexual activity for which the person could be charged with a criminal offense. The choice to prosecute Mr. Eichorn federally is based not on his suitability for prosecution under the statute, but on improper considerations that these other state offenders do not share, namely, a proclivity to exercise his first amendment right to hold public office, and to associate with a political party of one's choice and with others for the common advancement of political beliefs and ideas.

### 2. *Impermissible Motives.*

Mr. Eichorn has been selectively chosen for prosecution on the improper basis of exercising his constitutional rights to participate in politics. As then-acting United States Attorney Lisa D. Kirkpatrick stated in reference to Mr. Eichorn "[t]he U.S. Attorney's Office has no tolerance for ***public officials*** who violate federal law – particularly those laws meant to protect children." Ex. D1 (emphasis added). Clearly, Mr. Eichorn has been singled out and selectively chosen for prosecution by the federal government on the improper basis of the exercise of his constitutional right to engage in political association and his holding of public office. Indeed, law

15

enforcement did not know Mr. Eichorn's identity at the time he was arrested. Tr. at 87:3-7. He was only charged federally after law enforcement learned of his identity, including the fact that he was then a sitting state senator.

The government is not permitted to base this prosecution on an impermissible motive, such as one based on "race, religion or exercise of the constitutional rights." *United States v. Moody*, 778 F.2d 1380, 1386 (9th Cir. 1985), *as modified* at 791 F.2d 707 (9th Cir. 1986) (quoting *United States v. McWilliams*, 730 F.2d. 1218, 1221 (9th Cir. 1984)). Accordingly, we submit that the foregoing establishes a *prima facie* case of discriminatory purpose and unconstitutional denial of equal protection. Therefore, Mr. Eichorn respectfully asks the Court to dismiss the indictment on the basis of selective prosecution.

## II. ALL EVIDENCE OBTAINED FROM THE WARRANTLESS ARREST OF MR. EICHORN AND THE SUBSEQUENT WARRANTLESS SEARCHES OF HIS TRUCK MUST BE SUPPRESSED.

A warrantless arrest by law enforcement is reasonable under the Fourth Amendment where there is probable cause to believe that someone has committed or is committing a crime. *United States v. Evans*, 851 F.3d 830, 835 (8th Cir. 2017). Whether probable cause exists "depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). It involves a practical inquiry, and the totality of the circumstances must be sufficient to warrant a prudent man in believing that the

(suspect) had committed or was committing an offense. *Evans*, 851 F.3d at 835 (citing *Kuehl v. Burtis*, 173 F.3d 646, 650 (8th Cir. 1999). However, probable cause requires "more than a reasonable, articulable suspicion that a person committed a crime." *Bell v. Neukirch*, 979 F.3d 594, 603 (8th Cir. 2020).

### A. Bloomington Officers Lacked Probable Cause to Justify the Warrantless Arrest of Mr. Eichorn.

"The validity of a warrantless arrest by a state officer is an issue governed in the first instance by state law." *United States v. Rambo*, 789 F.2d 1289, 1293 (8th Cir. 1986) (citing *Johnson v. United States,* 333 U.S. 10, 15 n. 5 (1948)). When a defendant is arrested by state law enforcement officers for violation of a state offense, courts must analyze the legality of the arrest under state law. *United States v. Shephard*, 21 F.3d 933, 936 (9th Cir. 1994) (citing *Ker v. California*, 374 U.S. 23, 37-38 (1963)). Under Minnesota law, it is illegal for an individual to "hire[], offer[], or agree[] to hire an individual who the actor reasonably believes to be under the age of 18 years but at least 16 years to engage in sexual penetration or sexual contact." Minn. Stat. § 609.324, subd. 1(c)(3). Accordingly, to support an arrest law enforcement must have probable cause: 1) that a defendant hired, offered, or agreed to hire an individual to engage in sexual penetration or sexual contact; and 2) the defendant reasonably believes the individual is under 18 years of age.

As in *Shephard*, and as Getsch conceded, Mr. Eichorn was arrested by state law enforcement officers for an alleged violation of Minnesota state law. Tr. at

60:12-14. Mr. Eichorn did not hire, offer to hire, or agree to hire the decoy—or anyone else—to engage in sexual penetration or sexual contact. While some of the text messages between the decoy and Mr. Eichorn contained sexual language, there was no explicit offer or agreement made by Mr. Eichorn. The text messages were nothing more than discussion and inquiries.

There is no question Mr. Eichorn did not hire the decoy. There was no agreed upon price or sexual act. Similarly, Mr. Eichorn did not offer to hire the decoy. He did not suggest a price and a sexual act or acts, only to have the decoy reject an offer. The decoy did not reject an offer because no offer existed. Finally, Mr. Eichorn did not agree to hire the decoy for a sexual act. Again, there was no agreed upon price or act, nor was there an agreement that a sexual act would occur and price would be determined at a later time. The only offer was an offer to meet.

Similarly, the record demonstrates that Mr. Eichorn did not reasonably believe that the decoy was under 18 years of age. When the decoy first informed Mr. Eichorn she is 17 years old, he ceases communication until the next day. He did not make any statements about desiring or looking for a teenager but expressed doubt about whether the decoy was truly 17. Mr. Eichorn went so far as to request photographs from the decoy and, after he received photographs showing both her chest and face, Mr. Eichorn told the decoy he believed she was in her 20s. Notwithstanding the decoy's texts informing Mr. Eichorn she was 17 years old, Mr. Eichorn's responses

18

and actions establish his belief that the decoy was lying about her purported age of 17.

Because Mr. Eichorn was illegally arrested, all evidence obtained pursuant to his illegal arrest, including any and all statements made by Mr. Eichorn, his identification, and any derivative evidence, should be suppressed. *Wong Sun v. United States*, 371 U.S. 471, 484–85 (1963).

**B. Assuming Arguendo That Mr. Eichorn's Conduct Constituted an Attempt to Hire the Decoy Under Minnesota State Law, Probable Cause to Arrest Dissipated Based Upon Mr. Eichorn's Abandonment.**

Under Minnesota law, "[w]hoever, with intent to commit a crime, does an act which is a substantial step toward, and more than preparation for, the commission of the crime is guilty of an attempt to commit that crime." Minn. Stat. § 609.17, subd. 1. However, it is a defense to the charge if a defendant desists voluntarily and in good faith and abandons his intent to commit the offense. *Id.* at subd. 3; *see also State v. Strommen*, 648 N.W.2d 681, 683–85, 689 (Minn. 2002).

Here, assuming arguendo that Mr. Eichorn's initial conduct constituted an attempt to hire the decoy, the evidence before the Court demonstrates Mr. Eichorn voluntarily abandoned any such attempt. After arriving at the location and walking in and around the parking lot, Mr. Eichorn ceased all text and/or telephone contact with the decoy. Certainly, if Mr. Eichorn truly intended to follow through and hire

the decoy for a sexual act, he would have maintained communication until the two met face-to-face.

Because Mr. Eichorn turned off his cellular phone, walked back to his truck, and attempted to leave the parking lot before engaging in any sexual act or even meeting face-to-face with the decoy, Mr. Eichorn abandoned any alleged attempt.

### C. Law Enforcement Illegally Searched Mr. Eichorn's Truck Without a Search Warrant and Absent an Exception to the Warrant Requirement.

"The Fourth Amendment proscribes all unreasonable searches and seizures, and it is a cardinal principle that 'searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.'" *United States v. Taylor*, 636 F.3d 461, 464 (8th Cir. 2011) (citations omitted).

One such exception to the warrant requirement is a search incident to lawful arrest. *Arizona v. Gant*, 556 U.S. 332, 338 (2009). *Gant* held that a vehicle search was lawful "incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest." *Id.* at 351.

20

Here, as argued above, Mr. Eichorn was unlawfully arrested. Additionally, it is undisputed that law enforcement searched Mr. Eichorn's vehicle without a search warrant. Further, law enforcement had no reason to believe Mr. Eichorn's truck contained any evidence of the offense. The only plausible evidence—his cellular phone—was not in the truck, as law enforcement observed Mr. Eichorn walking in and around the meetup area while holding his phone and texting with the decoy. Thus, this exception does not justify the warrantless search of the truck.

Another recognized exception "allows law enforcement to inventory the contents of a lawfully impounded vehicle without a warrant or probable cause." *Taylor*, 636 F.3d at 464 (citing *United States v. Rowland,* 341 F.3d 774, 779 (8th Cir. 2003)). The government must show that law enforcement's "conduct complied with the inventory search exception to the warrant requirement." *Taylor*, 636 F.3d at 464 (citing *United States v. Marshall,* 986 F.2d 1171, 1173 (8th Cir. 1993)).

This exception, too, fails. As Officer Maitrejean acknowledged, he was not personally involved with the seizure and impoundment of Mr. Eichorn's truck. Tr. at 29:10-30:4. He testified that he has no personal knowledge regarding why officers seized Mr. Eichorn's truck, whether anyone consented or objected to the seizure of the truck, and he does not know why the truck was impounded and is currently being held. *Id.* at 33:17-34:16. Officer Maitrejean testified that each officer with the Bloomington Police Department is responsible for knowing the department's

21

policies. *Id.* at 30:5-15. However, the Court heard no testimony from any of the officers involved in the seizure and impoundment.

The closest the Court came to hearing evidence regarding the inventory search was the testimony of Agent Getsch, who testified that he spoke with Bloomington Police Detective Jacob Lucas. Getsch testified that he spoke with Lucas about whether BPD sought forfeiture of Mr. Eichorn's truck, and Lucas confirmed that BPD would pursue forfeiture. However, Getsch offered no testimony that he spoke with Lucas—or any other officer who participated in the seizure or search of the truck—regarding whether BPD policies were followed during the search.

Additionally, the record does not establish that Mr. Eichorn's truck was in the custody of law enforcement when it was searched by BPD officers. Mr. Eichorn's truck was legally parked in a parking lot—it was not parked or left on a city street or illegally parked in a handicap parking spot. Law enforcement simply lacked a legal basis to two Mr. Eichorn's truck after his arrest.

Absent the sworn testimony of any of the BPD officers involved in the impoundment and search, and absent any evidence that Getsch spoke with BPD officers regarding whether BPD policies were followed, the Court can only *assume* officers followed those procedures. Accordingly, the government cannot show the search was valid as an inventory search.

Consent is also a valid exception to the warrant requirement. *Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973). Here, it is clear from the record that neither Mr. Eichorn, nor any other lawful owner of the truck, consented to law enforcement seizing or searching the truck.

## III.    ALL EVIDENCE OBTAINED PURSUANT TO SEARCH WARRANTS OBTAINED AFTER MR. EICHORN'S ARREST MUST BE SUPPRESSED BECAUSE SUCH EVIDENCE IS TAINTED BY THE PRIOR ILLEGALITIES.

Also, search warrants obtained by law enforcement, and the evidence obtained during law enforcement's searches pursuant to those warrants, must be suppressed because said evidence is tainted by the prior illegalities. *Wong Sun v. United States*, 371 U.S. 471 (1963).

## IV.    ANY AND ALL STATEMENTS MADE TO LAW ENFORCEMENT'S POST-ARREST CUSTODIAL INTERROGATION MUST BE SUPPRESSED.

Following his arrest, law enforcement did not advise Mr. Eichorn of his *Miranda* rights prior to engaging in custodial interrogation. Once he had been handcuffed and was in custody, officers began questioning Mr. Eichorn about the keys to his truck, his phone, permission to go into his vehicle, along with other questioning.

In *Miranda v. Arizona*, 384 U.S. 436 (1966) the Supreme Court held that all custodial interrogations must be preceded by a Miranda Warning. Without such warning any statements elicited through custodial interrogation are inadmissible. *Id*.

23

at 492; *see also Missouri v. Seibert*, 542 U.S. 600, 611-12 (2004) (admissibility of custodial statements conditioned on Miranda Warning).

At the motions hearing, following discussion about Mr. Eichorn's post-arrest statements and the motion to suppress statements, the government informed the Court the government does not intend to introduce any of Mr. Eichorn's statements at trial during its case-in-chief. Tr. at 4:1-5:4.

## V.    THE IDENTITY, AGE, AND LAW ENFORCEMENT AGENCY OF THE UNDERCOVER OFFICER IS CRITICAL TO MR. EICHORN'S DEFENSE AND MUST BE DISCLOSED.

*Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny require the prosecution to disclose, upon defense request, evidence in the prosecutor's possession that is material and potentially helpful to the defense. The court ruled in *Brady* that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution." *Id*. at 87. Accord *Strickler v. Green*, 527 U.S. 263, 280-81 (1999); *Kyles v. Whitley*, 514 U.S. 419, 432-38 (1995). Equally as important to a defendant as his right to favorable evidence is his constitutional guarantee of "'a meaningful opportunity to present a complete defense.'" *Crane v. Kentucky,* 476 U.S. 683, 690 (1986) (quoting *California v. Trombetta,* 461 U.S. 479, 485 (1984)).

Here, the decoy's identity, age, and law enforcement department or agency she is employed by are material and helpful—even crucial—to the defense, particularly as it relates to whether the defendant believed that such individual was less than 18 years old. In response to photographs Mr. Eichorn received via text from the decoy, Mr. Eichorn expressed a belief that the decoy appeared to be over 20 years old. As Getsch acknowledged at the motions hearing, for the FBI to arrest Mr. Eichorn they would need probable cause that he reasonably believed the decoy was under 18 years old. Tr. at 59:16-19.

At trial, the government would need to prove beyond a reasonable doubt that Mr. Eichorn believed the decoy was under 18 years old. Had the decoy never sent any photographs to Mr. Eichorn, the decoy's identity and age may not be relevant. However, Mr. Eichorn's response after receiving the photographs, at the very least, demonstrates that he expressed doubt as to the decoy's age. This doubt was based upon the actual fact that the decoy is a police officer and is therefore, clearly, over age 18. Therefore, the decoy's age, identity and law enforcement agency employing her are not only favorable to the defense, but they are critical to Mr. Eichorn's constitutional right and ability to present a meaningful and complete defense. Indeed, the jury must be able to observe her at trial to determine whether Mr. Eichorn believed she was under the age of 18. The only ability for the defense to subpoena

the decoy and put her in front of the jury is by requiring the government to disclose her age, identity, and the law enforcement agency employing her.

## CONCLUSION

Based upon the above arguments, as well as all files and records in this matter before the Court, Mr. Eichorn respectfully requests the Court grant each of his motions.

Dated: September 29, 2025              Respectfully submitted,

                                       */s/ Charles L. Hawkins*
                                       Charles L. Hawkins (Attorney No. 124369)
                                       150 S. Fifth Street, Ste. 2860
                                       Minneapolis, MN 55402
                                       Tel: (612) 339-6921
                                       Email: clhcrimlaw@yahoo.com


                                       */s/ Arthur J. Waldon*
                                       Arthur J. Waldon (Attorney No. 0397729)
                                       P.O. Box 1242
                                       Lakeville, MN 55044
                                       Tel: (612) 719-0625
                                       Email: arthur@waldonlawmn.com

                                       *Attorneys for Defendant*