UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
CASE NO. 25-CR-117 (ECT/SGE)

_____

UNITED STATES OF AMERICA,

      Plaintiff,

v.                                        **DEFENDANT'S REPLY TO GOVERNMENT'S RESPONSE TO DEFENDANT'S POST-HEARING MEMORANDUM IN SUPPORT OF PRETRIAL MOTIONS**

JUSTIN DAVID EICHORN,

      Defendant.

_____

Mr. Eichorn, by and through undersigned counsel, respectfully submits this Reply to Government's Response to Defendant's Post-Hearing Memorandum in Support of Pretrial Motions.

## ARGUMENT

### I. THE INDICTMENT MUST BE DISMISSED BASED UPON THE GOVERNMENT'S VINDICTIVE AND SELECTIVE PROSECUTION OF MR. EICHORN.

The Government argues Mr. Eichorn and other individuals arrested as part of the sting operation are being prosecuted federally and, based upon these and prior prosecutions for this offense, Mr. Eichorn and the other federal defendants are similarly situated. However, Mr. Eichorn is the only individual being prosecuted who was a sitting politician at the time he was charged federally. Most notably, then-acting United States Attorney Lisa Kirkpatrick stated,

"[t]he U.S. Attorney's Office has no tolerance for public officials who violate federal laws." Ex. D1. At that time, her statement referred only to Mr. Eichorn based upon his status as a state senator at the time. Additionally, Mr. Eichorn is the only defendant involved in the Bloomington sting operation who has no criminal history yet is being prosecuted in federal court. Thus, Mr. Eichorn and the other individuals being prosecuted by the United States Attorney's Office are not similarly situated.

## II. ALL EVIDENCE OBTAINED FROM THE WARRANTLESS ARREST OF MR. EICHORN AND THE SUBSEQUENT WARRANTLESS SEARCHES OF HIS TRUCK MUST BE SUPPRESSED.

The Government clings to its position that Mr. Eichorn offered or agreed to hire the decoy, regardless of age, for sexual contact. In support of its position, the Government points to the fact that Mr. Eichorn communicated via text with the decoy over multiple days and discussed sexual acts, pricing, and potential locations for sex. However, Mr. Eichorn's questions and responses fall far short of offering or agreeing to hire the decoy for sex. Not only did Mr. Eichorn fail to explicitly offer or agree to hire the decoy for sex, but Mr. Eichorn repeatedly expressed concern about meeting with the decoy, and he inquired multiple times about simply meeting to see if he could get comfortable. Mr. Eichorn's requests and concerns about wanting to meet to just get comfortable demonstrate that he was uncomfortable making or accepting an offer to meet for sex. While the Government urges this Court to infer that Mr. Eichorn's ultimate goal was to meet the decoy for sex, the totality of the circumstances establishes that Mr. Eichorn was engaging in nothing more than chat and an offer to meet with the decoy. To be sure, the only offer was an offer to meet.

The Government also relies heavily on the fact that the decoy told Mr. Eichorn on three occasions that she was underage. However, when the decoy first informed Mr. Eichorn she is 17 years old, he ceased communication and did not contact her until the next day. He did not express any specific desire about having sex with a minor, and he requested photographs from the decoy to help verify that she was not a minor.

Understandably, the Government focuses exclusively on the text of the messages between Mr. Eichorn and the decoy and avoids the photographs the decoy sent to Mr. Eichorn. This is because Mr. Eichorn doubted the decoy when she told him she was 17 years old. Notably, after the decoy sent photographs of her face and chest, Mr. Eichorn responded by stating he believed the decoy was in her twenties. Absent the photographs, the Government might have an argument. However, the decoy's appearance, particularly given that Mr. Eichorn responded to the decoy and expressed doubt about her age being under 18 and states that she appears to be in her twenties, waters down the Government's argument that Mr. Eichorn believed the decoy was 17 based on the mere fact that she told Mr. Eichorn that was her age.

In addressing the fact that Mr. Eichorn was attempting to get into his truck to leave the parking lot when he was arrested, the Government argues that Mr. Eichorn could not have abandoned the attempt because he had already taken a substantial step toward committing the offense. However, everything Mr. Eichorn did was, at most, mere preparation, and his conduct falls far short of the required substantial step.

The Government likens this case to an attempted bank robbery and argues that a defendant cannot escape culpability or a probable-cause arrest by attempting to rob a bank, then walking out when unsuccessful. However, driving to the bank is not a substantial step

toward committing the offense—it is mere preparation. Similarly, Mr. Eichorn driving to the parking lot is, at most, mere preparation. He did not bring the money or condoms and have them on his person, he did not knock on the door or even approach the specific unit the decoy was in, and he attempted to get back into his truck to leave the parking lot. Thus, law enforcement did not have probable cause to arrest Mr. Eichorn and, if there was any probable cause, it dissipated based upon Mr. Eichorn's abandonment.

In attempting to justify the search of Mr. Eichorn's truck, the Government argues that the search was a valid inventory search. As the Government notes, such a warrantless search must be reasonable and must be "conducted according to standardized police procedures." ECF No. 62 at 4. The Government outlines the criteria in the Bloomington Police Department polices and procedures for inventory searches. However, the Court heard no testimony that officers understood or followed those policies and procedures here. At most, Agent Getsch heard from Detective Lucas that Bloomington PD would pursue forfeiture. However, that conversation occurred after the search, and neither Getsch, nor any other witness the Court heard from, testified that the search was pursuant to department policy. Accordingly, the Government has failed to show the search was valid as an inventory search.

Because Mr. Eichorn was illegally arrested, and because the search of his truck was not conducted as a valid inventory search, all evidence obtained, including and any derivative evidence, should be suppressed. *Wong Sun v. United States*, 371 U.S. 471, 484–85 (1963).

### III. THE IDENTITY, AGE, AND LAW ENFORCEMENT AGENCY OF THE UNDERCOVER OFFICER IS CRITICAL TO MR. EICHORN'S DEFENSE AND MUST BE DISCLOSED.

4

The Government argues that "Eichorn has not and cannot articulate any way that her true age and identity bear on any element of the charged offense or any proper defense. This case turns on what Eichorn *knew* at the time he agreed to meet for commercial sex." ECF No. 62 at 5 (emphasis added). However, as previously argued, "the decoy's identity, age, and law enforcement department or agency she is employed by are material and helpful—even crucial—to the defense, particularly as it relates to whether the defendant *believed* that such individual was less than 18 years old." ECF No. 61 at 25 (emphasis added).

At trial, the jury will be required to determine whether Mr. Eichorn reasonably believed the decoy was under 18. If this sting operation involved only text messages and no photographs or visuals, then the Government's argument might hold water. However, where the decoy's physical appearance goes directly to whether Mr. Eichorn would believe she was under 18 at the time, such information is crucial to the defense and she be placed in front of the factfinder at trial.

Dated: October 27, 2025              Respectfully submitted,

*/s/ Charles L. Hawkins*
Charles L. Hawkins (Attorney No. 124369)
150 S. Fifth Street, Ste. 2860
Minneapolis, MN 55402
Tel: (612) 339-6921
Email: clhcrimlaw@yahoo.com


*/s/ Arthur J. Waldon*
Arthur J. Waldon (Attorney No. 0397729)
P.O. Box 1242
Lakeville, MN 55044
Tel: (612) 719-0625
Email: arthur@waldonlawmn.com

*Attorneys for Defendant*