# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

**UNITED STATES OF AMERICA**,                    Case No. 25-cr-117 (ECT/SGE)

      Plaintiff,

    v.                                    **ORDER & REPORT AND**
                                        **RECOMMENDATION**

**JUSTIN DAVID EICHORN**,

      Defendant.

---

This case is before the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1 for an order and report and recommendation on Defendant Eichorn's

1) Motion to Compel Disclosure of Evidence Favorable to the Defendant (Dkt. 36),

2) Motion to Dismiss the Indictment Based on Vindictive and Selective Prosecution (Dkt. 37),

3) Motion to Suppress Statements (Dkt. 38), and

4) Motion to Suppress Evidence Obtained Through Illegal Search and Seizure (Dkt. 40).

The Court held a hearing on August 6, 2025. (Dkt. 52.) Assistant United States Attorney Daniel Bobier appeared on behalf of the United States of America ("the Government"). Attorneys Charles Hawkins and Arthur Waldon appeared on behalf of Defendant Eichorn, who was present. At the motion hearing the Court heard testimony

1

from Bloomington Police Officer Kyle Maitrejean, and Federal Bureau of Investigations Special Agent Terry Gestch.[1] After the hearing, the parties filed supplemental briefs. (Dkts. 61, 62,[2] 63.) The Court took the pending motions under advisement on October 27, 2025, the date of the most recent filing.

For the reasons stated below, the Court **GRANTS-IN-PART AND DENIES-IN-PART** Defendant's Motion to Compel Disclosure of Evidence Favorable to the Defendant (Dkt. 36) and **DENIES** Defendant's Motion to Suppress Statements (Dkt. 38) as moot. This Court also recommends that Defendant's Motion to Dismiss the Indictment Based on Vindictive and Selective Prosecution (Dkt. 37) be **DENIED**; and Defendant's Motion to Suppress Evidence Obtained Through Illegal Search and Seizure (Dkt. 40) be **DENIED**.

---

[1] Ahead of the motion hearing the Government submitted Government Exhibit A (Dkt. 43-1), text messages; Government Exhibit B (Dkt. 43-2), the Bloomington Police Department Manual on the impounding of vehicles; and Sealed Government Exhibit C. Mr. Eichorn offered, and the Court received Defense Exhibit D1, a press release; Exhibits D2-D16, Hennepin County court documents of individuals involved in the law enforcement sting; Exhibits D17-D21, Washington County court documents of individuals involved in a law enforcement sting; Exhibit D22, dashboard camera video; Exhibit D23, photographs; and Exhibit D24, Mr. Eichorn's Hennepin County Complaint. The Court allowed Mr. Eichorn to submit Defense Exhibit 24, Mr. Eichorn's Hennepin County Complaint, immediately following the hearing.

[2] The Court notes that rather than providing additional legal authority supporting its arguments, the Government's supplemental brief relied solely on its original response brief and cases cited therein. The failure to provide any prior federal cases prosecuted under 18 U.S.C. § 2422(b) or meaningful citation in support of its argument (rather than repeating what was already said) was unhelpful. (*See* Dkt. 62 (citing Dkt. 43).)

## BACKGROUND

In March 2025, the Bloomington Police Department conducted a sting operation to apprehend individuals buying commercial sex from girls under the age of eighteen. The officers posted online advertisements for commercial sex that included photos and a description of a female decoy and phone numbers that officers monitored. (EH Tr. at 7-8; PH Tr at 7-8.)[3] When an individual reached out to contact a particular female decoy by using the advertisement's phone number, undercover officers would respond. (*Id.*)

On March 11, 2025, officers received multiple text messages to a number listed in an advertisement from an individual later determined to be Mr. Eichorn.[4] (*See* Gov. Ex. A at 1.) That advertisement included photos and listed the age of the female decoy as eighteen. (PH Tr. at 20.) The undercover officers did not respond on March 11, 2025. (Gov. Ex. A at 1.) On March 12, 2025, officers received another text message from Mr. Eichorn. (*Id.*) A conversation ensued about rates for sex acts and availability. At one point Mr. Eichorn requested an additional photograph, and an undercover officer sent a photograph of the

---

[3] For ease of reference, the April 2, 2025 preliminary and detention hearing transcript (Dkt. 16) will be cited as "PH Tr." followed by the specific page number where appropriate. The August 6, 2025 evidentiary hearing transcript (Dkt. 52) will be cited as "EH Tr." followed by the page number associated where appropriate. The evidentiary hearing is currently restricted from public access, but no party has requested any redactions, and this Report and Recommendation does not contain any confidential information or personal identifiers. The Court also notes that the Government submitted both transcripts, in their entirety, as Exhibits D and E. (Dkts. 62-1, 62-2.) The Court will cite the actual transcripts on the docket, and not Government's Exhibits D and E.

[4] Law enforcement did not discover the identity of the suspect communicating through text message until March 17, 2025, when Mr. Eichorn was arrested. (EH Tr. at 87.)

chest and cleavage of the female decoy. (*Id.* at 3.) After the photograph was sent, the

following exchange occurred:

> Eichorn: Qv or hhr[5] how old are you
> Undercover: kinda nervous 2 say
> Eichorn: Ok why?
> Undercover: im younger then my ad ses
> Eichorn: Ok I dont remember what it said I can't find it so what is it?
> Undercover: im 17 sry dont want u 2 b mad

(*Id.* at 4.) Mr. Eichorn responded the next day on March 13, 2025, asking if the decoy was

still available. (*Id.*) Later in the day the following exchange occurred:

> Eichorn: Ok..... do ya not drive ? Your post says 18 most hotels won't let you get a
> room at 18 how did ya get the room? Just want to make sure your real
> Undercover: no license...my cousin rented it for me, she kinda looks out 4 me

(*Id.* at 5.) Shortly thereafter, the undercover officer sent another photograph per Mr.

Eichorn's request. (*Id.* at 6.)

On March 17, 2025, Mr. Eichorn sent another text message to the decoy. (*Id.*) The

conversation continued about rates, sex acts, and where to meet. (*Id.* at 6-7.) The

undercover officer again brought up the topic of age:

> Undercover: Age/race?
> Undercover: ?
> Eichorn: 38 and white and you?
> Undercover: A lil younger than my ad....is that ok? I just wanna have fun and no
> drama babe
> Eichorn: Sure I don't know what your ad says cuz I don't have it up anymore but as
> long as your legal age I am fine
> Undercover: I am 17...like I said don't want any drama but wanna be upfront cause
> one guy got hella mad at me
> Eichorn: Why was he so mad? I think age of consent is 17 when do ya turn 18?
> Undercover: Idk lol he was a creep anyway. I don't turn 18 till December

---

[5] "Qv" refers to "quick visit" or an appointment less than fifteen minutes. (PH Tr. at 17.)

> Eichorn: It's says age of consent is 16 ...... over 18 is in position of authority over you like a teacher or friends parent

(*Id.* at 7-8.) After this exchange, the undercover officer provided Mr. Eichorn with a meet up location. (*Id.*at 9.) Mr. Eichorn again requested another picture:

> Undercover: Do you wanna cum hun? Otherwise I gonna make different plans
> Eichorn: Yes I would like to can I have a sexy pic of you to feel comfortable coming maybe even just topless waist up is fine
> Undercover: I can give you a sexy photo but I don't do nudes....i don't wanna get my stuff spread all over the internet
> Eichorn: Ok how about a pic in just your bra and underwear holding up 2 fingers

(*Id.* at 9-10.) The undercover officer sent the picture requested. (*Id.* at 10.) Mr. Eichorn responded:

> Eichorn: Was hoping for a more full body shot but Hot you look in your 20's
> Undercover: Says the guy who won't send me any photos lol...awfully demanding. Sorry my photo isn't good enough. I can assure you I am 17. If you aren't interested....bye
> Eichorn: I am interested on the way just trying to be comfortable

(*Id.* at 10-11.) After this exchange, the undercover texted a map directing Mr. Eichorn to park in a specific spot. (*Id.* at 11.) When Mr. Eichorn arrived at the location the following exchange occurred:

> Eichorn: Just pulling in come out what are ya wearing I'll look for you
> Undercover: All black. I don't see any cars where I told you to park...did you bring your friends truck???
> Eichorn: Ya come on out I'll look for ya
> Undercover: I only come out if you park where I tell you....its for my safety and to know you aren't the cops
> Eichorn: I am there
> Undercover: No you aren't. I can see that spot from my apartment and there are no cars there. If you can't find a parking spot how are you gonna find my G spot?
> Eichorn: I parked in the line you said
> Undercover: You are playing me...u must be a cop
> Eichorn: By a grey ford
> Undercover: Are you in a turquoise SUV?
> Eichorn: Yep right by that

5

> Undercover: Is that you walking in the black shirt?
> Eichorn: Ya
> Undercover: MAA[6]

(*Id.* at 12-13.) During the above exchange, law enforcement observed Mr. Eichorn arrive in a white Toyota Tundra wearing a black shirt. (EH Tr. 41-42; PH Tr. at 40.) Officers also observed Mr. Eichorn walk around the wooded area right behind the truck. (*See* Ex. D23.)

As officers arrived on the scene, Mr. Eichorn was observed walking towards his truck and placing his phone inside.[7] (EH Tr. at 42; Ex. D22 at 0:00:30-41; Ex. D23 at 5-13.) The arresting officer immediately exited her vehicle and informed Mr. Eichorn he was under arrest. (Ex. D22 at 0:00:34-37.) Mr. Eichorn then closed the truck door and was arrested. (Ex. D22 at 0:00:34-50; EH Tr. at 42-43.)

After Mr. Eichorn's arrest, the Bloomington police officers on scene searched his truck. (EH Tr. at 44.) Officers seized two Apple iPhones, an unopened condom in the driver side door, $105 cash in the driver side door handle, and $24 cash in the center console. (EH Tr. at 44-45; PH Tr. at 42.) Mr. Eichorn's truck was then impounded by local authorities. (EH Tr. at 46; PH Tr. at 48.)

---

[6] "MAA" is the confirmatory text that undercover officers would send as they arrested an individual so that they might observe the text message notification appear on the suspects phone during the arrest. (EH Tr. at 65-67, 81.)

[7] Mr. Eichorn argues that, at some time between exiting the truck and being arrested, he had shut his phone off. (Dkt. 61 at 5.) However, on the record before this Court, it is unclear whether the phone was turned off. At the evidentiary hearing, there was testimony that Mr. Eichorn either had notifications turned off or the phone was turned off. (EH Tr. at 66-67, 69.) But testimony established that after Mr. Eichorn's arrest law enforcement discovered the application used to communicate with the decoy had been deleted at some point after he exited his truck, and that the confirmatory "MAA" text may not have been delivered. (EH Tr. at 81-82.)

6

On March 19, 2025, a Complaint was filed against Mr. Eichorn in Hennepin County District Court for violation of Minn. Stat. §609.324, Subd. 1(c)(3). (Ex. D24.) That same day Mr. Eichorn was federally charged by complaint with violating 18 U.S.C. § 2422(b) with Persuading, Inducing, Enticing, or Coercing an Individual who has not Attained the Age of 18 years of age to engage in Prostitution or any Sexual Activity for which the Person Could Be Charged with a Criminal Offense. (*See* Dkt. 1.)

Immediately after filing the federal Complaint, the United States Attorney's Office for the District of Minnesota issued a press release which included a statement from the Acting United States Attorney that: "The U.S. Attorney's Office has no tolerance for public officials who violate federal law-particularly those laws meant to protect children . . . ." (Ex. D1.)

## ANALYSIS

Following Mr. Eichorn's release from custody, the Government provided discovery and information about the sting operation to defense counsel.  On June 6, 2025, defense counsel filed several pretrial motions seeking the identity of the undercover female decoy, dismissal of the charges, and the suppression of evidence obtained during the initial arrest of Mr. Eichorn. The Court addresses each of these motions below.

### I.  Motion to Compel Disclosure (Dkt. 36)

Mr. Eichorn moves for a court order requiring the Government to disclose the age and identity of the undercover officer who posed for the photographs sent to Mr. Eichorn in the text exchange. Mr. Eichorn argues that the undercover officer's identity and true age

are relevant to whether Mr. Eichorn believed the individual he arranged to meet for commercial sex was under the age of eighteen. (Dkt. 36 at 2.)

"[T]he government must disclose any evidence both 'favorable to an accused' and 'material either to guilt or to punishment.'" *United States v. Whitehill*, 532 F.3d 746, 753 (quoting *Brady v. Maryland*, 373 U.S. 83, 87 (1963)). At the hearing, Mr. Eichorn contended that the only way to establish the undercover officer's age is to subpoena her to testify at trial and examine her about "when she was born and what her age is." (EH Tr. at 20.) The Court agrees that the age of the person in the photo is material to Mr. Eichorn's reasonable belief regarding the decoy's age at the time of the offense but disagrees that her identity is material. Moreover, Mr. Eichorn has not explained how the undercover officer's identity is material nor provided any legal support for the disclosure of the identity of an undercover officer. Therefore, the Court orders the Government to provide an affidavit by the case agent or another officer as to the true date of birth of the undercover officer who posed for the photographs used to ensnare Mr. Eichorn. Her identity shall remain confidential and protected. Although this Court finds that her date of birth is relevant, this Court takes no position as to its admissibility at trial.

## II. Motion to Dismiss (Dkt. 37)

Mr. Eichorn argues that the indictment should be dismissed because the Government engaged in vindictive and selective prosecution of him based on his status as an individual holding public office. The Government argues that Mr. Eichorn has failed to meet his burden to demonstrate either selective or vindictive prosecution, and the

Government is not required to ignore a potential defendant's public role when making a prosecutorial decision.

### A. Selective Prosecution

"[T]he decision whether to prosecute may not be based on an unjustifiable standard such as race, religion, or other arbitrary classification." *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (cleaned up). To establish selective prosecution a defendant must show "1) that he has been singled out for prosecution while others similarly situated have not been prosecuted for similar conduct and 2) that the government's action in thus singling him out was based on an impermissible motive . . . ." *United States v. White*, 928 F.3d 734, 742-43 (8th Cir. 2019) (quoting *United States v. Parham*, 16 F.3d 844, 846 (8th Cir. 1994)). "These two elements are often referred to as 'discriminatory effect and 'discriminatory purpose.'" *United States v. Lazzaro*, No. 21-cr-0173 (PJS/DTS), 2022 WL 16948157, at * 2 (D. Minn. Nov. 15, 2022) (citing *United States v. Armstrong*, 517 U.S. 456, 465 (1996).

"Due to the highly sensitive nature of judicial inquiries into governmental decisions to prosecute, the defendant carries a heavy burden to show that he was selectively prosecuted." *Lazzaro*, 2022 WL 16948157, at * 2 (citations omitted); *Parham*, 16 F.3d at 846 ("The defendant's burden is a heavy one, and because we afford broad discretion to prosecuting authorities, we require a showing of intentional and purposeful discrimination.") (citation omitted). "In order to dispel the presumption that a prosecutor has not violated equal protection, a criminal defendant must present 'clear evidence to the contrary.'" *Armstrong*, 517 U.S. at 465 (quoting *United States v. Chemical Foundation, Inc.,* 272 U.S. 1, 14–15 (1926)).

9

Mr. Eichorn argues that the Government engaged in selective prosecution because not all the Hennepin County and Washington County defendants arrested during sting operations were federally prosecuted, and he is a state senator. (Dkt. 61 at 14-15.) The Government responds that (1) it has historically prosecuted similarly situated individuals and is presently prosecuting three other individuals from the same Bloomington sting operation and (2) the decision to prosecute Mr. Eichorn was not based on an impermissible motive. (Dkt. 43 at 11-12; Dkt. 62 at 2 (citing Dkt. 43 at 10-13).)

### 1. Mr. Eichorn Was Not Singled Out From Similarly Situated Individuals

Mr. Eichorn has demonstrated that some similarly situated individuals were not federally indicted, but he has not established that he was singled out for prosecution.

"The first prong of the selective-prosecution analysis asks whether the challenged prosecutorial decision had a discriminatory effect." *Lazzaro*, 2022 WL 16948157, at * 2. To demonstrate a discriminatory effect:

> A defendant must show that he was treated differently from 'comparators' —that is, other individuals:
>
> (1) who committed roughly the same crime under roughly the same circumstances;
>
> (2) who are outside the protected class, i.e., who did not share the trait or participate in the activity on which the prosecutor allegedly relied; and
>
> (3) who were known to the prosecutor.

*Id.* (cleaned up).

Mr. Eichorn provided the Court with the state court documents of eighteen defendants involved in the Hennepin County and Washington County stings but no specific

argument on the similar circumstances of those defendants' offenses. (*See* Exs. D2-D21.)
Instead Mr. Eichorn points to several circumstances distinguishing his case from the other
defendants' cases: (1) he did not initially park in the designated spot, (2) he walked away
from the truck and then returned to leave, (3) he shut off his phone, (4) he has no criminal
history while other federally charged defendants have a criminal history, and (5) other state
defendants were arrested after knocking on door of an agreed upon meeting place. (Dkt. 61
at 14; Dkt. 63 at 1-2.)  Regardless, Mr. Eichorn admits the other defendants' cases occurred
under similar circumstances. In other words, the state defendants committed the same
offense under the same circumstances. (Dkt. 61 at 14; s*ee also* Exs. D2-21.) Thus, the state
defendants are similarly situated individuals for purposes of the first prong of the selective
prosecution analysis.

However, even though the state defendants are similarly situated, Mr. Eichorn's sole
reliance on the Government's non-prosecution of those individuals is not enough to
demonstrate that he was singled out for prosecution. *Lazzaro*, 2022 WL 16948157, at * 4
("If non-prosecution of individuals who committed the same crime was enough to show a
discriminatory effect, the first element of the selective-prosecution test would be
meaningless.") On this point *Lazzaro* is instructive. There the defendant pointed to ten
defendants charged in state court and not in federal court to demonstrate discriminatory
effect. The court explained:

> [T]he fact that the State of Minnesota prosecuted ten defendants for
> unidentified sex crimes and those defendants were (presumably) not also
> federally prosecuted under 18 U.S.C. § 1591 despite (presumably) being
> known to the United States Attorney's Office is simply not statistically
> significant. To identify ten defendants prosecuted for sex crimes by the State

of Minnesota says nothing about the total number of individuals who could have been prosecuted in federal court for sex trafficking but were not.

*Id.* at 5 (citations omitted). Similarly, here, the fact that fifteen individuals were charged in state court but were not federally charged under 18 U.S.C. § 2442(b) "is simply not statistically significant" because it "says nothing about the total number of individuals who could have been prosecuted in federal court for [child enticement] but were not." *Id.* at 5. And Mr. Eichorn has not shown he was singled out and treated differently because the Government also federally charged three other individuals involved in the Bloomington sting. *See United States v. Cazhco-Inamagua*, No. 25-cr-128 (ECT/SGE); *United States v. Huerta-Sanchez*, No. 25-cr-129 (ECT/SGE); *United States v. Taweeleh*, No. 25-cr-139 (JMB/DTS).

In sum, Mr. Eichorn has failed to establish the first prong of selective prosecution, because he has not demonstrated that his prosecution had a discriminatory effect. *Lazzaro*, 2022 WL 16948157, at * 2; *White*, 928 F.3d at 742-43.

## 2. Mr. Eichorn's Federal Charge Was Not Based on Impermissible Motive

Because Mr. Eichorn has failed to establish his prosecution had a discriminatory effect, the Court need not address whether the prosecution was for an impermissible motive, but the Court will do so "only for the sake of completeness." *United States v. Leathers*, 354 F.3d 955, 963 (8th Cir. 2004)

To show an impermissible motive, Mr. Eichorn must demonstrate the Government chose to prosecute him because he is a public official. *White*, 928 F.3d at 42-43. In support, Mr. Eichorn relies solely on the United States Attorney's press release that stated there is

12

"no tolerance for public officials who violate federal law—particularly those laws meant to protect children . . . ." (Dkt. 61 at 15-16 (citing Ex. D1).) The Government counters that Mr. Eichorn was charged because he attempted to purchase commercial sex from a minor, and Mr. Eichorn's public office does not make him immune from criminal prosecution.

The press release alone is not "clear evidence" rebutting the "presumption" that the Government's charging decision was based on a permissible motive. *Armstrong*, 517 U.S. at 465. The Government's federal indictment of three other individuals involved in the same sting—who were not public officials—suggests that the Government was not motivated to prosecute only individuals holding public office or exercising their first amendment rights. *See United States v. Jama*, No. 22-cr-225 (NEB/DTS), 2025 WL 227296, at * 5 (D. Minn. Jan. 17, 2025) ("The government's indictment of Aimee Bock—who is not Somali or Somali-American and Black—suggests that the government's decision to prosecute was not motivated by race or ethnicity."). The Government was not required to ignore Mr. Eichorn simply because he happened to hold public office at the time he was caught in a sting that also caught several other individuals. And although the Government specifically argues Mr. Eichorn was not charged because he held public office, "political prominence" is a legitimate consideration in charging decisions because it "may enhance the deterrent effect of the prosecution and maintain public faith in the precept that public officials are not above the law." *United States v. Ojala*, 544 F.2d 940, 944 (8th Cir. 1976) (quoting *United States v. Peskin*, 527 F.2d 71, 86 (7th Cir. 1975), *cert. denied*, 429 U.S. 818 (1976)). Thus, Mr. Eichorn has not met his heavy burden to show that the Government charged him based on an impermissible motive.

13

## B. Vindictive Prosecution

"Vindictive prosecution occurs when a prosecutor seeks to punish a defendant solely for exercising a valid legal right." *United States v. Williams*, 793 F.3d 957, 963 (8th Cir. 2015) (citing *Leathers*, 354 F.3d at 963). "The defendant has the burden to demonstrate that the 'prosecution was brought in order to punish [him] for the exercise of a legal right,' and because of the broad discretion given to prosecutors in performing their duties, the defendant's burden to show vindictive prosecution is 'a heavy one.'" *Williams*, 793 F.3d at 963 (quoting *Leathers*, 354 F.3d at 961). To meet this heavy burden, the Eighth Circuit has explained:

> A defendant can establish prosecutorial vindictiveness through two methods; first, with objective evidence of the prosecutor's vindictive or improper motive in increasing the number or severity of charges. Absent such evidence, a defendant may, in *rare* instances, rely upon a presumption of vindictiveness, if he provides sufficient evidence to show a reasonable likelihood of vindictiveness exists. In determining whether the presumption of vindictiveness applies we examine the prosecutor's actions in the context of the entire proceedings.

*Id.* (citation modified).

Mr. Eichorn argues the "prosecution in this case was vindictive in that it was motivated solely by the fact that the government is unable to secure a more significant period of incarceration for Mr. Eichorn in the initial prosecution by the Hennepin County Attorney's Office." (Dkt. 37 at 5.) He also argues the Government is vindictively charging him because he holds public office. (*Id.* at 6.) Mr. Eichorn does not provide objective evidence of either. Instead, Mr. Eichorn argues the circumstances of his case warrant a presumption of vindictiveness. (Dkt. 61 at 10.) The Court disagrees.

14

Mr. Eichorn has not demonstrated that this case is the "rare instance" where a presumption of vindictiveness applies. Mr. Eichorn's reliance on the sentencing disparity between state and federal offenses misses the mark because the Eighth Circuit has "repeatedly stated that a defendant may be subject to a harsher sentence in federal court than the sentence he would receive in state court on charges based on the same conduct without implicating his due-process rights." *Leathers*, 354 F.3d at 963 (citations omitted). Nor is the fact that Mr. Eichorn was initially prosecuted in state court and later charged in federal court an impermissible basis to prosecute. *See United States v. Turpin,* 920 F.2d 1377, 1388 (8th Cir.1990), *cert. denied,* 499 U.S. 953 (1991) ("The fact that the federal government prosecutes a federal crime in a federal court that could or has been prosecuted as a state crime in state court does not itself violate due process."). And lastly, to the extent Mr. Eichorn again relies on the United States Attorney's press release, as he did with his selective prosecution argument above, his argument fails. The press release, standing alone, does not meet Mr. Eichorn's heavy burden to demonstrate that the Government prosecuted Mr. Eichorn to punish him for holding public office.

Accordingly, the Court recommends that Mr. Eichorn's Motion to Dismiss the Indictment Based on Vindictive and Selective Prosecution (Dkt. 37) be denied.

### III. Motion to Suppress Statements

Mr. Eichorn's motion sought to suppress "statements made to Bloomington police officers following his arrest" and "any and all statements made during his transport to the Bloomington Police Department or the Hennepin County jail." (Dkt. 38 at 1.) On August 4, 2025, Mr. Eichorn informed the Court that the parties had conferred, and the

Government did not intend to offer any of Mr. Eichorn's statements at trial rendering his motion moot. (Dkt. 48.) At the hearing, the Government confirmed that it did not intend to use the statements identified. (EH Tr. At 4-5; Dkt. 43 at 24-25.) Consequently, the Court denies the motion as moot.

### IV. Motion Suppress Evidence (Dkt. 40)

In his motion to suppress evidence, Mr. Eichorn submits that officers unlawfully seized evidence because they lacked probable cause to arrest him and search his truck.

### A. Warrantless Arrest

"A warrantless arrest by law enforcement is reasonable where there is probable cause to believe that someone has committed or is committing a crime." *United States v. Evans*, 851 F.3d 830, 835 (8th Cir. 2017) (quoting *United States v. Winarske*, 715 F.3d 1063, 1066 (8th Cir. 2013)). Probable cause is "determined according to the totality of the circumstances." *Evans*, 851 F.3d at 835. "Probable cause . . . is not a high bar: It requires only the kind of fair probability on which reasonable and prudent people, not legal technicians act." *Bell v. Neukirch*, 979 F.3d 594, 603 (8th Cir. 2020) (quoting *Kaley v. United States*, 571 U.S. 320, 338 (2014) (cleaned up)). "It requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *D.C. v. Wesby*, 583 U.S. 48, 57 (2018) (cleaned up). "The existence of probable cause 'depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest.'" *Neukirch*, 979 F.3d at 603 (quoting *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004)).

Here, Mr. Eichorn was arrested by state law enforcement, thus "[t]he validity of a warrantless arrest by a state officer is an issue governed in the first instance by state law." *United States v. Rambo*, 789 F.2d 1289, 1293 (8th Cir. 1986) (citing *Johnson v. United States,* 333 U.S. 10, 15 n.5 (1948)). Minnesota law prohibits an individual from "hiring, offering, or agreeing to hire an individual who the actor reasonably believes to be under the age of 18 years but at least 16 years to engage in sexual penetration or sexual contact." Minn. Stat. § 609.324, subd. 1(c)(3). Moreover, under Minnesota law, "[w]hoever, with intent to commit a crime, does an act which is a substantial step toward, and more than preparation for, the commission of the crime is guilty of an attempt to commit that crime." Minn. Stat. § 609.17, subd. 1. Consequently, to have probable cause to arrest, law enforcement needed to believe that Mr. Eichorn violated Minn. Stat. § 609.324, subd. 1(c)(3) or attempted to violate the statute.

Based on the record presented, the Court finds that the officers had probable cause to arrest Mr. Eichorn. The text message exchange discussed sex acts, rates for sex acts, the decoy's age, and a meeting location to engage in said sex acts. (*See* Gov. Ex. A.) Officers observed Mr. Eichorn arrive at the agreed upon meeting location and eventually park in the spot designated by the undercover officers. (EH Tr. at 41-42.) Mr. Eichorn exited his truck and confirmed through text that he was the man in the black shirt walking near the truck. (Gov. Ex. A at 12-13.) The arresting officer could reasonably conclude based on the text messages discussing rates for sexual acts, the decoy's stated age of seventeen years old, and Mr. Eichorn's actual arrival at the agreed upon meeting place that he was attempting to violate Minn. Stat. § 609.324, subd. 1(c)(3).

17

In the alternative, Mr. Eichorn argues that if the Court finds there was probable cause to arrest, that any such probable cause dissipated because he abandoned his attempt purchase commercial sex from the decoy when he walked back to his truck and did not maintain communication through text. (Dkt. 61 at 19.) This argument is unpersuasive for two reasons. First, abandonment is a defense to an attempt. Minn. Stat. § 609.17, subd. 3; *State v. Degroot*, 946 N.W.2d 354, 363 (Minn. 2020) (explaining that "[a]bandonment is an affirmative defense to a charge of attempt"). Mr. Eichorn provides no legal support for the novel application of a theory of abandonment as dissipating probable cause for an arrest.[8] Moreover, this Court's independent research has revealed no case in which an alleged abandonment of an attempt to purchase commercial sex from a minor dissipated probable cause to arrest. Second, Mr. Eichorn walking towards his truck without sending an additional text message seconds before he was arrested does not change the fact that Mr. Eichorn arrived at the agreed upon location to purchase commercial sex from a minor. In sum, the Court concludes that the officers had probable cause to arrest Mr. Eichorn.

### B. Warrantless Truck Search

Mr. Eichorn argues that the warrantless search of his truck violated the Fourth Amendment and no exception to the warrant requirement applies. (Dkt. 61 at 20.) The

---

[8] The Government urges the Court to deny Mr. Eichorn's abandonment argument on grounds that Mr. Eichorn took a substantial step. (Dkt. 43 at 14 n.14; Dkt. 62 at 3.) The Government does not provide any argument on whether abandonment can obviate probable cause to arrest.

Government argues that the search of Mr. Eichorn's truck was authorized as a search incident to Mr. Eichorn's arrest and under the automobile exception.[9]

### 1. Search Incident to Arrest

"Under the search incident to arrest exception to the warrant requirement of the Fourth Amendment of the United States Constitution, officers may search a vehicle incident to an arrest only if (1) the arrestee is unrestrained and 'within reaching distance of the passenger compartment' when the search begins or (2) 'it is reasonable to believe the vehicle contains evidence of the offense of arrest.'" *United States v. Stegall*, 850 F.3d 981, 984 (8th Cir. 2017) (quoting *Arizona v. Gant*, 556 U.S. 332, 351 (2009)). "A search of items incident to an arrest lawfully extends to 'the arrestee's person and the area within his immediate control,' which means 'the area from within which an arrestee might reach in order to grab a weapon or evidentiary items.'" *United States v. Allen*, 713 F.3d 382, 387 (8th Cir. 2013) (quoting *Chimel v. California,* 395 U.S. 752, 763  (1969)).

Mr. Eichorn argues that the search incident to arrest exception to the warrant requirement does not apply because he was unlawfully arrested. As discussed above, the arresting officers had probable cause to arrest Mr. Eichorn, and his arrest was lawful.

Next, Mr. Eichorn argues that law enforcement had no reason to believe the truck contained evidence of the offense because "his cellular phone—was not in the truck . . . ." (Dkt. 61 at 21.) This assertion is factually incorrect. Officers witnessed Mr. Eichorn place

---

[9] The Government also argues that the inventory search exception applies as well as the inevitable discovery doctrine. The Court need not reach this argument because it agrees that the warrantless search of the truck was permissible under both the search incident to arrest exception and automobile exception.

a cell phone in the truck seconds before his arrest. (EH Tr. at 42.) Dash cam video of his arrest shows Mr. Eichorn had his phone as he walked to his truck, and as he closed the door the phone was no longer in his hand. (Ex. D22 at 0:00:30-41; *see also* Ex. D23 at 5-13 (photographs of Eichorn walking towards truck with phone).) Thus, it was reasonable for officers to believe that the truck contained evidence of the crime of arrest—the cellphone containing the communications with the decoy discussing sex acts, rates, and age. *Stegall*, 850 F.3d at 984. Additionally, the two Apple iPhones, unopened condom, and cash in the driver side door, were recovered in an area within the scope of a search incident to arrest. *Allen*, 713 F.3d at 387. Consequently, the warrantless search of Mr. Eichorn's truck was lawful under the search incident to arrest exception.

### 2. Automobile Exception

The automobile exception to the Fourth Amendment allows police officers to conduct a warrantless search of a vehicle if, at the time of the search, "they have probable cause to believe that the vehicle contains contraband or other evidence of a crime." *United States v. Brown*, 550 F.3d 724, 727 (8th Cir. 2008) (quoting *United States v. Kennedy*, 427 F.3d 1136, 1140-41 (8th Cir. 2005)).

The Government argues that officers had probable cause to believe the truck contained evidence of a crime because they observed Mr. Eichorn drive the truck to the parking lot and eventually park in the spot identified, and as they approached to arrest him, he placed the phone he was using to communicate with the undercover officers in the truck. (Dkt. 43 at 16-17.) Mr. Eichorn does not address the automobile exception in his post-hearing brief or in his reply to the Government's post hearing brief. (Dkts. 61, 63.) Here,

officers had probable cause to believe the truck contained evidence of the crime of arrest—the cellphone containing the communications with the decoy discussing sex acts, rates, and age. Thus, the warrantless search of the truck was lawful under the automobile exception.

In sum, the Court recommends Mr. Eichorn's motion to suppress be denied because officers had probable cause to arrest, and the warrantless search of his truck was permissible under both the search incident to arrest exception and automobile exception.

## ORDER

Based on the foregoing, an all the files, records, and proceedings herein, **IT ORDERED** that:

1. Mr. Eichorn's Motion to Compel Disclosure of Evidence Favorable to the Defendant (Dkt. 36) is **GRANTED-IN-PART AND DENIED-IN-PART**; and

2. Mr. Eichorn's Motion to Suppress Statements (Dkt. 38) is **DENIED** as moot.

## RECOMMENDATION

Based on the foregoing, an all the files, records, and proceedings herein, **IT IS HEREBY RECOMMNEDED** that:

1. Mr. Eichorn's Motion to Dismiss the Indictment Based on Vindictive and Selective Prosecution (Dkt. 37) be **DENIED**;

2. Mr. Eichorn's Motion to Suppress Evidence (Dkt. 40) be **DENIED**.


Dated: November 26, 2025            *s/Shannon G. Elkins*
                                    SHANNON G. ELKINS
                                    United States Magistrate Judge

**NOTICE**

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).