UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

United States of America,

Plaintiff,

v.

Justin David Eichorn,

Defendant.

File No. 25-cr-117 (ECT/SGE)

**OPINION AND ORDER**

Kristian C.S. Weir, United States Attorney's Office, Minneapolis, MN, for Plaintiff United States of America.

Arthur Waldon, IV, Waldon Law, PLLC, Lakeville, MN; and Charles L. Hawkins, Charles Hawkins Law Office, Minneapolis, MN, for Defendant Justin David Eichorn.

In an Order and Report and Recommendation [ECF Nos. 64–65],[1] Magistrate Judge Shannon G. Elkins (1) partially granted a Motion to Compel Disclosure of Evidence Favorable to the Defendant [ECF No. 36], and (2) recommended that three motions Mr. Eichorn filed be denied. Mr. Eichorn's motions include a Motion to Dismiss the Indictment Based on Vindictive and Selective Prosecution [ECF No. 37], a Motion to Suppress Statements [ECF No. 38], and a Motion to Suppress Evidence Obtained Through Illegal Search and Seizure [ECF No. 40]. Both parties object to Judge Elkins's Order, and Mr.

---

[1]    The Order and Report and Recommendation is filed under two separate docket entries. *See* ECF Nos. 64–65. The docket text titles ECF No. 64 the Order and ECF No. 65 the Report and Recommendation. *Id.* However, the documents filed under the two entries are identical. For efficiency's sake, only ECF No. 65 will be cited throughout this Order.

Eichorn objects to the Report and Recommendation. This order addresses those objections. Familiarity with Judge Elkins's Order and Report and Recommendation is presumed.

Begin with the parties' objections to the Order. In this respect, the Order is reviewed for clear error. 28 U.S.C. § 636(b)(1)(A); D. Minn. LR 72.2(a)(3). Judge Elkins ordered the Government to produce an affidavit identifying the decoy undercover officer's birth date. ECF No. 65 at 8. The Government argues that the undercover officer's age is immaterial to whether Mr. Eichorn believed she was under the age of eighteen at the time of the alleged offense. ECF No. 69 at 5–7. Mr. Eichorn argues that he is also entitled to discovery of the undercover officer's identity. ECF No. 68 at 1–2. He claims she is a "material witness." *Id.* at 2.

"Criminal defendants do not have a general constitutional right to discovery." *United States v. Johnson*, 228 F.3d 920, 924 (8th Cir. 2000) (citing *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977)). "In most circumstances, then, a defendant must point to a statute, rule of criminal procedure, or other entitlement to obtain discovery from the government." *Id.* Mr. Eichorn's request for this discovery is based on *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny, and his objection relies specifically on *United States v. Barnes*, 486 F.2d 776 (8th Cir. 1973).

*Brady* requires the prosecution to disclose "evidence favorable to an accused" where "the evidence is material either to guilt or to punishment." 373 U.S at 87; *accord United States v. Whitehill*, 532 F.3d 746, 753 (8th Cir. 2008). *Brady*'s mandate "applies to both exculpatory and impeachment evidence." *Whitehill*, 532 F.3d at 753 (citing *United States v. Bagley*, 473 U.S. 667, 676 (1985)). *Barnes* holds that "where the informant is shown to

be a material witness and the government does not plan to use the informant as a witness it owes a duty to make every reasonable effort to have the informant made available to the defendant to interview or use as a witness, if desired." 486 F.2d at 779–80 (footnote omitted). "[W]here the witness is an active participant or witness to the offense charged, disclosure will almost always be material to the accused's defense." *Id.* at 778–79.

Both *Brady* and *Barnes* contain a materiality requirement, which necessitates examining the crime with which Mr. Eichorn is charged and the undercover officer's involvement. Mr. Eichorn is charged with attempted enticement of a minor under 18 U.S.C. § 2422(b). ECF No. 17. Under this statute, the Government must prove that Mr. Eichorn believed the undercover officer was under eighteen years of age. *See United States v. Harcrow*, 135 F.4th 636, 641 (8th Cir. 2025) (describing elements for attempted enticement of a minor). The Government's representations—which Mr. Eichorn does not dispute—are that the undercover officer posed for pictures in the online advertisement and photos sent via text to Mr. Eichorn. ECF No. 69 at 5–6. Mr. Eichorn had no other contact with the undercover officer. *See id.* at 6 ("Her sole contribution was to pose for photos."). The undercover officer was not present at the scene of the arrest. *Id.* Nor was she responsible for drafting the texts sent to Mr. Eichorn. *Id.*

I agree with Judge Elkins that "the age of the person in the photo is material to Mr. Eichorn's reasonable belief regarding the decoy's age at the time of the offense but . . . that her identity is immaterial." ECF No. 65 at 8. Mr. Eichorn may attempt to show at trial that he reasonably believed the person in the photograph was not under the age of eighteen. (In one of his text messages, he communicated that the undercover officer appeared to be

3

"in [her] 20's" in one photograph, notwithstanding text messages assuring him that she was 17. ECF No. 43-1 at 10.) The undercover officer's age is material to that issue. That is enough to reasonably warrant discovery of the matter, though not the question of the evidence's admissibility at trial. At the same time, however, the undercover officer's role was minor. She was not an "active participant" nor was she a "witness" to the offense. *See Barnes*, 486 F.2d at 778–79. There is no indication she would be able to provide material testimony.

Turn next to Mr. Eichorn's objections to the Report and Recommendation. To the extent he has objected, the standard of review is *de novo*. 28 U.S.C. § 636(b)(1); D. Minn. LR 72.2(b)(3).

Mr. Eichorn objects to Judge Elkins's recommendation that his Motion to Dismiss the Indictment Based on Vindictive and Selective Prosecution [ECF No. 37] be denied. The first issue is whether Judge Elkins correctly determined that Mr. Eichorn has not shown his prosecution was "selective" in the relevant sense.

The government has "broad discretion" in deciding whom to prosecute. *Wayte v. United States*, 470 U.S. 598, 607 (1985). But prosecutorial discretion is not "unfettered" and is "subject to constitutional restraints." *Id.* at 608 (quoting *United States v. Batchelder*, 442 U.S. 114, 125 (1979)). "The decision to prosecute may not be deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification, including the exercise of protected statutory and constitutional rights." *Id.* (citation modified). To make out a prima facie claim of selective prosecution, a defendant must show "1) that he has been singled out for prosecution while others similarly situated have not been

4

prosecuted for similar conduct and 2) that the government's action in thus singling him out was based on an impermissible motive such as race, religion, or the exercise of constitutional rights." *United States v. White*, 928 F.3d 734, 742–43 (8th Cir. 2019) (quoting *United States v. Parham*, 16 F.3d 844, 846 (8th Cir. 1994)). "This 'standard is a demanding one . . . .'" *Id.* (quoting *United States v. Armstrong*, 517 U.S. 456, 463 (1996)). Prosecutors are entitled to "the presumption of regularity" which requires that "in the absence of clear evidence to the contrary, courts [must] presume that they have properly discharged their official duties." *Armstrong*, 517 U.S. at 464 (quoting *United States v. Chem. Found., Inc.*, 272 U.S. 1, 14–15 (1926)).

The first prong of the selective-prosecution analysis asks whether the challenged prosecutorial decision had a discriminatory effect. *United States v. Lazzaro*, No. 21-cr-173 (PJS/DTS), 2022 WL 16948157, at *2 (D. Minn. Nov. 15, 2022) (citing *Armstrong*, 517 U.S. at 465).

> A defendant must show that he was treated differently from comparators—that is, other individuals: (1) who committed roughly the same crime under roughly the same circumstances; (2) who are outside the protected class,—i.e., who did not share the trait or participate in the activity on which the prosecutor allegedly relied; and (3) who were known to the prosecutor.

*Id.* (citation modified).

On this first prong, Judge Elkins concluded that, even though fifteen defendants charged only in state court are similarly situated to Mr. Eichorn, the non-prosecution of those individuals does not show that Mr. Eichorn was singled out. ECF No. 65 at 11–12. Judge Elkins identified two independent grounds for this conclusion. First, she reasoned

5

that the non-prosecution of fifteen individuals was "'not statistically significant' because it 'says nothing about the total number of individuals who could have been prosecuted in federal court for [child enticement] but were not.'" *Id.* at 12 (quoting *Lazzaro*, 2022 WL 16948157, at *5). Second, she noted that the Government in fact charged three individuals involved in the same sting. *Id.* Mr. Eichorn does not seem to dispute these conclusions. He argues instead that, because the other three federally-charged defendants were indicted more than two weeks after him, the "only rational inference" is that "they were charged in an attempt to weaken any potential selective prosecution claim." ECF No. 68 at 5–6.

This is not persuasive. As the Supreme Court has recognized, there are many factors involved in the decision to prosecute. These include, among others, "the strength of the case, the prosecution's general deterrence value, the Government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan." *Wayte*, 470 U.S. at 607. There are many plausible explanations for why the Government indicted the other three defendants and the timing of these indictments. Mr. Eichorn himself identifies facts that might explain things—he asserts that the three other federally-charged defendants had prior criminal records and were not in the United States legally. ECF No. 68 at 3–4. The idea that the Government only charged the other defendants to undermine any selective prosecution argument is not the "only rational inference," as Mr. Eichorn contends. *Id.* at 5–6.

Mr. Eichorn objects to Judge Elkins's conclusion that he failed to show the Government's decision to federally charge him was based on an impermissible motive. *Id.*

6

at 3, 6.  Mr. Eichorn relies on a press release in which then-acting United States Attorney

Lisa D. Kirkpatrick stated:

> The U.S. Attorney's Office has no tolerance for public officials who violate federal law—particularly those laws meant to protect children . . . . I am grateful to the Bloomington Police Department, to the FBI, and to all law enforcement officers who use undercover operations to identify and arrest child sex predators to prevent them from abusing real children.

Ex. D1.  Mr. Eichorn argues this statement is direct evidence that he was targeted for

exercising his First Amendment right to hold public office, his political affiliation, or both.

ECF No. 68 at 4, 6–7.

Mr. Eichorn must provide "clear evidence" to rebut the presumption that the

Government did not harbor an impermissible motive in charging him.  *See Armstrong*, 517

U.S. at 464 (quoting *Chem. Found.*, 272 U.S. at 14).  As Judge Elkins correctly observed,

"political prominence is not an impermissible consideration" in deciding whom to

prosecute.  *United States v. Ojala*, 544 F.2d 940, 944 (8th Cir. 1976).  As the Seventh

Circuit reasoned,

> [a]ssuming that the decision to indict Peskin and press for trial was based in part on consideration of his political prominence, this is not an impermissible basis for selection.  It makes good sense to prosecute those who will receive the media's attention. Publication of the proceedings may enhance the deterrent effect of the prosecution and maintain public faith in the precept that public officials are not above the law.

*United States v. Peskin*, 527 F.2d 71, 86 (7th Cir. 1975); *accord Ojala*, 544 F.2d at 944

(quoting *Peskin*).  And, as the Eighth Circuit has noted, the "government lacks the means

to investigate and prosecute every suspected violation" of the law, and "[s]election based

in part upon the potential deterrent effect on others serves a legitimate interest in promoting more general compliance with" the law. *Ojala*, 544 F.2d at 945. Mr. Eichorn has not shown the Government charged him based on an impermissible motive.

Mr. Eichorn objects to Judge Elkins's recommendation that his motion to dismiss the indictment due to vindictive prosecution be denied. ECF No. 68 at 7. "Vindictive prosecution occurs when a prosecutor seeks to punish a defendant solely for exercising a valid legal right. Such prosecution constitutes a violation of due process." *United States v. Muratella*, 843 F.3d 780, 782–83 (8th Cir. 2016) (quoting *United States v. Williams*, 793 F.3d 957, 963 (8th Cir. 2015)). The defendant bears a "heavy" burden to "demonstrate that the 'prosecution was brought in order to punish [him] for the exercise of a legal right.'" *Williams*, 793 F.3d at 963 (quoting *United States v. Leathers*, 354 F.3d 955, 961 (8th Cir. 2004)).

> A defendant can establish prosecutorial vindictiveness through two methods; first, with "objective evidence of the prosecutor's vindictive or improper motive in increasing the number or severity of charges." *United States v. Chappell*, 779 F.3d 872, 879 (8th Cir. 2015) (internal quotation omitted). "Absent such evidence, a defendant may, in *rare* instances, rely upon a presumption of vindictiveness, if he provides sufficient evidence to show a reasonable likelihood of vindictiveness exists." *Id.* (alteration in original) (internal quotation omitted). In determining whether the presumption of vindictiveness applies we examine "the prosecutor's actions in the context of the entire proceedings." *Id.* at 880 (quotation omitted).

*Id.*

Mr. Eichorn claims that Judge Elkins failed to consider Ms. Kirkpatrick's statement in combination with the Government's decision not to prosecute the fifteen state-court

defendants.  ECF No. 68 at 7.  This is not correct.  Judge Elkins carefully evaluated Mr. Eichorn's contentions.  ECF No. 65 at 14–15.  Mr. Eichorn's objections do not undermine Judge Elkins's conclusions.

Mr. Eichorn next objects to Judge Elkins's determination that his warrantless arrest was supported by probable cause.  ECF No. 68 at 8–9.  He asserts "there was no explicit agreement" that Mr. Eichorn would hire the undercover officer for sex.  *Id.* at 8.  As he sees it, the text messages between Mr. Eichorn and the undercover officer merely demonstrate the Mr. Eichorn was "inquiring about meeting with the undercover officer, and not specifically for sex acts."  *Id.* at 9.

"A warrantless arrest is consistent with the Fourth Amendment if it is supported by probable cause."  *United States v. Guevara*, 731 F.3d 824, 832 (8th Cir. 2013) (citation omitted).  "Probable cause to make a warrantless arrest exists 'when the totality of the circumstances at the time of the arrest are sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense.'"  *Ulrich v. Pope County*, 715 F.3d 1054, 1059 (8th Cir. 2013) (quoting *Borgman v. Kedley*, 646 F.3d 518, 523 (8th Cir. 2011)).  Put another way, "probable cause for a warrantless arrest depends upon whether, at the moment the arrest was made, the facts and circumstances within the arresting officers' knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense."  *United States v. Tovar-Valdivia*, 193 F.3d 1025, 1028 (8th Cir. 1999) (per curiam) (citation modified).

As Judge Elkins observed, it is a violation of Minnesota law to "hire[] or offer[] or agree[] to hire an individual who the actor reasonably believes to be under the age of 18 years but at least 16 years to engage in sexual penetration or sexual contact." Minn. Stat. § 609.324, subdiv. 1(c)(3). Additionally, Minnesota law provides that "[w]hoever, with intent to commit a crime, does an act which is a substantial step toward, and more than prepared for, the commission of the crime is guilty of an attempt to commit that crime." Minn. Stat. § 609.17, subdiv. 1. Under Minnesota law, the "substantial step" requirement is not readily susceptible to bright-line rules but rather depends on the facts of each case. *See, e.g.*, *State v. Degroot*, 946 N.W.2d 354, 363 (Minn. 2020).

In *Degroot*, the Minnesota Supreme Court upheld a defendant's conviction for attempted third-degree criminal sexual conduct. 946 N.W.2d at 357; Minn. Stat. § 609.17, subdiv. 1 (2018) (attempt); Minn. Stat. § 609.344, subdiv. 1(b) (2018) (third-degree criminal sexual conduct). An undercover officer operated a decoy profile of a fourteen-year-old boy. *Degroot*, 946 N.W.2d at 358. The defendant exchanged numerous electronic messages with the officer that involved sexual photographs and discussion, and an agreement to meet. *Id.* During their text communications, the officer communicated that he was fourteen years old. *Id.* The defendant asked "about preparing for anal sex," described "fetishized roleplay" he fantasized about for their encounter, and the defendant and officer made plans to shower together upon their meeting. *Id.* The defendant entered his car with items that he apparently intended to use during their planned sexual encounter and drove to an agreed meet-up location. *Id.* at 358–59, 363. The undercover officer directed the defendant to a parking lot across the street from the house where they would

meet. *Id.* at 358. The defendant asked if there was a "Ford Taurus in [the] garage" of the house where they were to meet, and the undercover officer replied, "yes." *Id.* Police officers observed the defendant exit his car and walk toward the house while carrying a plastic shopping bag. *Id.* They arrested him while he was still in the parking lot. *Id.* at 358–59. On these facts, the Minnesota Supreme Court held the "substantial-step element" of the attempt statute was met. *Id.* at 364.

Here, law enforcement posted an online advertisement for commercial sex that included pictures of an undercover officer (the decoy). ECF No. 16 at 7–8. Mr. Eichorn texted the phone number provided in that advertisement and said, "Hey Lexi I saw your post and [sic] chance you are available tonight." ECF No. 43-1 at 2; ECF No. 16 at 9. From then on, discussion between Mr. Eichorn and the officers centered around topics including (1) finding a time and location to meet up; (2) discussing the rates and sexual services provided by the decoy; (3) photos to confirm the decoy was real; and (4) the decoy's age. *See* ECF No. 43-1. For example, the following exchange took place on March 17, 2025:

> **Eichorn:** Ok what's your address? Maybe we could meet outside or public first to help us feel more comfortable
>
> **Officer:** Yes we could do that . . . . . I'm sorry babe my phone has been super busy and we hadnt talked for a while . . . . how long are you looking to spend?
>
> **Eichorn:** Qv[2] or half hour

---

[2] "Qv" stands for "quick visit," which is an appointment expected to last "15 minutes or so." ECF No. 16 at 17–18.

**Officer:** $80qv or $120hh

**Eichorn:** Ok and what's exactly do ya offer at that rate ?

**Eichorn:** ?

**Officer:** FS.[3] No greek[4] and bare[5] is extra

**Eichorn:** Ok how much extra ?

**Officer:** $25

**Eichorn:** Ok what's your address I'll see if I can get there

**Officer:** Age/race?

**Officer:** ?

**Eichorn:** 38 and white and you?

**Officer:** A lil younger than my ad . . . . is that ok? I just wanna have fun and no drama babe

**Eichorn:** Sure I don't know what your ad says cuz I don't have it up anymore but as long as your legal age I am fine

**Officer:** I am 17 . . . like I said don't want any drama but wanna be upfront cause one guy got hella mad at me

**Eichorn:** Why was he so mad? I think age of consent is 17 when do ya turn 18 ?

**Officer:** Idk lol he was a creep anyway. I don't turn 18 till December

**Eichorn:** It's says age of consent is 16 . . . . . . over 18 is in a position of authority over you like a teacher or friends parent

---

[3]   "FS" stands for "full service" which means "a sex act."  ECF No. 16 at 28–29.

[4]   "Greek" refers to anal sex.  ECF No. 16 at 29.

[5]   "Bare" refers to "sexual intercourse without a condom."  ECF No. 16 at 29.

ECF No. 43-1 at 7.  Later that afternoon, Mr. Eichorn requested a photo, and the decoy

sent one.  The following exchange took place:

> **Eichorn:** Was hoping for a more full body shot but Hot you look in your 20's
>
> **Officer:** Says the guy who won't send me any photos lol . . . awfully demanding.  Sorry my photo isn't good enough.  I can assure you I am 17.  If you aren't interested . . . . bye
>
> **Eichorn:** I am interested on the way just trying to be comfortable
>
> **Officer:** I'll make you comfortable . . . . how long babe? I wanna be ready for you
>
> **Eichorn:** 15 min
>
> **Officer:** [sends screenshot of map]
>
> **Eichorn:** Ok?
>
> **Officer:** Park in the red area and let me know you are here. I can see it from my apt and I will walk out to you
>
> **Eichorn:** Ok
>
> **Officer:** I am excited to meet you hun
>
> **Eichorn:** Me to
>
> …
>
> **Eichorn:** Just pulling in come out what are ya wearing I'll look for you
>
> **Officer:** All black. I don't see any cars where I told you to park . . . did you bring your friends truck???
>
> **Eichorn:** Ya come on out I'll look for ya
>
> **Officer:** I only come out if you park where I tell you . . . . its for my safety and to know you aren't the cops
>
> **Eichorn:** I am there

13

**Officer:** No you aren't.  I can see that spot from my apartment and there are no cars there.  If you can't find a parking spot how are you gonna find my G spot?

**Eichorn:** I parked in the line you said

**Officer:** You are playing me . . . u must be a cop

**Eichorn:** By a grey ford

**Officer:** Are you in the turquoise SUV?

**Eichorn:** Yep right by that

**Officer:** Is that you walking in the black shirt?

**Eichorn:** Ya

*Id.* at 10–13.  Law enforcement observed Mr. Eichorn arrive at the designated location in a white Toyota Tundra wearing a black shirt.  ECF No. 16 at 40; ECF No. 52 at 40–42.  Photos and video evidence submitted by Mr. Eichorn also show he was wearing a black shirt.  Exs. D22–D23.  Mr. Eichorn exited his vehicle and walked around a wooded area behind the truck.  *See* Ex. D23.  Mr. Eichorn walked towards the truck as officers arrived on scene.  D22 at 0:27–0:32.

These facts are like *Degroot*'s.  (1) Mr. Eichorn's text exchanges involved overtly sexual discussion.  (2) The officer repeatedly stated the decoy's age was seventeen.  (3) Mr. Eichorn agreed to meet the decoy at a particular location.  (4) He drove to that location.  (5) He exited his vehicle.  (6) Mr. Eichorn identified himself as the person wearing the black shirt walking in the parking lot.  Keeping in mind that *Degroot* involved a challenge to a conviction, it strongly supports the conclusion that there was probable cause to arrest Mr. Eichorn.  The contents of the multi-day text messages between Mr. Eichorn the officer,

Mr. Eichorn's actions in driving to the location specified by the officer for the meet-up, and the fact that Mr. Eichorn confirmed he was wearing a black shirt could certainly "lead a reasonable person to believe," *Ulrich*, 715 F.3d at 1059, that Mr. Eichorn had attempted to hire or had agreed to hire an underage person for sex acts in violation of Minnesota law.

Mr. Eichorn argues that because his arrest was unlawful, the warrantless search of his truck cannot be supported as a search-incident-to-arrest. ECF No. 68 at 9–10. Because I've concluded his arrest was not unlawful, this objection will be overruled. Mr. Eichorn also argues that the search was unlawful "under the automobile exception." *Id.* at 9. He provides no argument to support this position. Regardless, Judge Elkins's analysis is correct. *See* ECF No. 65 at 20–21.

### ORDER

Therefore, based on the foregoing, and on all the files, records, and proceedings herein, **IT IS ORDERED THAT**:

1.     Defendant's Objections to the Order and Report and Recommendation [ECF No. 68] are **OVERRULED**.

2.     The Government's Objection to the Order [ECF No. 69] is **OVERRULED**.

3.     The Report and Recommendation [ECF No. 65] is **ACCEPTED**.

4.     The Order [ECF No. 64] is **AFFIRMED**.

5.     Defendant's Motion to Dismiss the Indictment Based on Vindictive and Selective Prosecution [ECF No. 37] is **DENIED**.

6.     Defendant's Motion to Suppress Statements [ECF No. 38] is **DENIED AS MOOT**.

7.    Motion to Suppress Evidence Obtained Through Illegal Search and Seizure

[ECF No. 40] is **DENIED**.


Dated: February 17, 2026                    s/ Eric C. Tostrud
                                            Eric C. Tostrud
                                            United States District Court